UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOE SERAPIO RODRIGUEZ,<br><br>  Plaintiff,<br><br>  v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>  Defendant. | Case No.  1:21-cv-00514-CDB<br><br>ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL<br><br>(Doc. 16) |

Joe Serapio Rodriguez ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability insurance benefits under the Social Security Act. (Doc. 1). The matter is currently before the Court on the parties' briefs, which were submitted without oral argument. (Docs. 16, 21, 22). For the reasons stated, Plaintiff's appeal shall be denied.[1]

**I.  BACKGROUND**

**A. Introduction**

On April 10, 2018, Plaintiff filed an application for disability insurance benefits pursuant

---

[1] Both parties have consented to the jurisdiction of a magistrate judge and this action has been assigned to Magistrate Judge Christopher D. Baker for all purposes, in accordance with 28 U.S.C. § 636(c)(1). (Doc. 8).

to Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq*., alleging a period of disability beginning on January 1, 2014. (Administrative Record ("AR") 19, Docs. 11-1, 11-2). Plaintiff was born on May 23, 1958, and was 55 years old on the alleged disability onset date. *See generally* AR. Plaintiff claimed disability due to arthritis in his shoulder, knee, and lower back. *Id*. at 188-194. Subsequently, Plaintiff alleges disability due to degenerative disc disease and chronic back pain. *Id*. at 33. Plaintiff alleges the pain from his disability has prevented him from working. *Id*.

**B. Relevant Medical Evidence**[2]

On April 15, 2014, Plaintiff called Dr. Bimalroy Narendra Shah's office and reported he had been experiencing lower back pain for two weeks. *Id*. at 291. An appointment was scheduled for the next day. *Id*. On April 16, 2014, Dr. Shah reported Plaintiff had limited range of motion and pain in his back and diagnosed him with a thoracic spine sprain. *Id*. at 290. Dr. Shah ordered an x-ray of Plaintiff's thoracic spine and advised rest, ice/heat and Tylenol. *Id*.

That same day, Plaintiff underwent an x-ray of his thoracic spine performed by Dr. Joseph J. Lum. *Id*. at 289-90, 372-74. The x-ray found no thoracic vertebral body compression fractures. *Id*. The x-ray notes there were "multilevel degenerative changes with his intervertebral disc space narrowing and mild vertebral body spurring." *Id*. In addition, the x-ray reported visible degenerative changes of the cervical spine. *Id*.

On August 13, 2014, Plaintiff had another appointment with Dr. Shah. *Id*. at 288-89. Plaintiff reported he felt tired following a camping trip. *Id*. at 288. The record indicates Plaintiff's back was not discussed in this appointment. *Id*. at 288-89. On February 24, 2015, Plaintiff saw Dr. Shah for a third time. *Id*. at 286-87. Plaintiff complained of abdomen pain and expressed an interest in restarting Prozac for his memory. *Id*. at 286. Dr. Shah restarted medications for Plaintiff's hypertension and major depression. *Id*. at 287. The record indicates Plaintiff's back was not discussed in this appointment. *Id.* at 286-87. On March 2, 2015, Plaintiff saw Dr. Shah for a fourth time. *Id*. at 286. Plaintiff reported that his "[abdomen] pain has

---

[2] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issue.

1    completely resolved" and felt his back was "normal". *Id*. From 2016 to March 2017, Plaintiff
2    had three more appointments with Dr. Shah. *Id*. at 280-81, 283-86. In one appointment, Plaintiff
3    reported upper back pain along with complaints of congestion, dry cough, and wheezing. *Id*. at
4    283. Dr. Shah diagnosed Plaintiff with an upper respiratory infection. *Id*.

5    On June 2, 2017, Plaintiff saw Dr. Shah complaining of low back pain. *Id*. at 275. Dr.
6    Shah diagnosed Plaintiff with chronic low back pain and advised him to rest, apply cold and heat
7    packs, and use analgesics and muscle relaxants. *Id*. That same day, Plaintiff underwent an x-ray
8    of his lumbosacral spine. *Id.* at 325. The x-ray found there was moderate to severe disc space
9    narrowing at Plaintiff's L5-S1 with adjacent bony sclerosis and anterior spurring and mild disc
10   space narrowing at L4-L5. *Id*. at 326. On June 21, 2017, Dr. Shah noted Plaintiff was still having
11   chronic low back pain and prescribed him medicine for his back. *Id*. at 274. On October 13,
12   2017, Plaintiff saw Dr. Shah for memory issues. *Id*. at 269. In this appointment, Dr. Shah noted
13   Plaintiff's "[chronic lower back pain] was somewhat better after stem cell injections in Mexico"
14   but the pain had returned. *Id*.

15   In April 2018, state agency medical consultants Drs. D. Tayloe, and Phaedra Caruso
16   evaluated Plaintiff's medical record. *Id*. at 61-69. The consultants' assessment noted "the only
17   abnormal finding during the period" was Plaintiff's back, identifying it had been non-tender and
18   diagnosed with a thoracic sprain. *Id*. at 65. The consultants considered if Plaintiff possessed a
19   spine disorder but found there was insufficient evidence to evaluate the claim. *See Id*. at 66-67
20   (there is no indication that there is a medical opinion from any medical source). In June 2018,
21   state agency medical consultant Dr. F. Greene evaluated Plaintiff's medical record on
22   reconsideration. *Id*. at 70-76. Dr. F. Greene determined the "evidence in file is not sufficient to
23   fully evaluate [Plaintiff's] claim" and determined he was not disabled. *Id*. at 75.

24   **C. Administrative Proceedings**

25   The Commissioner denied Plaintiff's application initially on May 3, 2018, and again on
26   reconsideration on June 12, 2018. *Id*. at 144-50, 153-58. On June 19, 2018, Plaintiff submitted a
27   written request for a hearing. *Id*. at 165-66. Plaintiff represented by counsel appeared and
28   testified at a video conference hearing held before Administrative Law Judge Shane McGovern

(the "ALJ") on December 19, 2020. *Id*. at 39-62, 210-19.

**D. Hearing Testimony**

Plaintiff's attorney testified Plaintiff was severely impaired due to thoracic and lumbar degenerative disc disease. *Id*. at 33. Plaintiff testified in 2014 he began experiencing pain in his back. *Id*. at 36, 46. Plaintiff worked as a handyman but alleges he wasn't able to function due to back pain. *Id*. at 38. Plaintiff claims he sought treatment for his back from January 2014 to September 2015 and received an x-ray and physical therapy. *Id*. at 47. Plaintiff asserts his back pain limited the time he could sit, stand, and drive a vehicle, and the pain prevented him from lifting objects heavier than a gallon of milk. *Id*. at 48-49.

**E. The ALJ's Decision**

On February 5, 2020, the ALJ issued a decision finding that Plaintiff was not disabled. *Id*. at 18-33. The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. §§ 404.1520(a) and 416.920(a). *Id*. at 22. The ALJ found Plaintiff had met the Social Security Act's insured status requirement on September 30, 2015. *Id*. at 21. The ALJ determined Plaintiff did not engage in substantial gainful activity since January 1, 2014, the alleged onset date (step one). *Id*.

The ALJ held Plaintiff did not possess a severe impairment (step two). *Id*. at 21-23. The ALJ found, that in April 2014, Plaintiff had sought treatment for lower back pain and had been diagnosed with a thoracic spine sprain. *Id*. at 22. The ALJ noted Plaintiff's subsequent treatment records in 2014 and 2015, did not indicate he was experiencing any medical problems with his back. *Id*. at 22-23. The ALJ considered the medical opinions of state agency medical consultants. *Id*. at 23. Dr, D, Tayloe and Dr. Phaedra Caruso opined following a review of the record that Plaintiff had no severe impairments. *Id*. at 23. Dr. F. Greene opined there was insufficient evidence in the file to evaluate the claim. *Id*. The ALJ found "these opinions were persuasive to support the finding that the [Plaintiff] had no severe impairments through his date last insured as these opinions are consistent with the sparse treatment records during the relevant period in question." *Id*.

The ALJ determined the Plaintiff had "failed his burden of proof to establish a medically

determinable impairment prior to his date last insured, as there are no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment through the date last insured." *Id*. The ALJ thus concluded that Plaintiff was not under a disability within the meaning of the Act, at any time from January 1, 2014, through September 30, 2015, pursuant to (20 CFR 404.1520(c)). *Id*.

On February 12, 2020, the Appeals Council received a request for review of the ALJ's decision in this case. *Id*. at 11. The Appeals Council denied Plaintiff's request for review on August 21, 2020, making the ALJ's decision the final decision of the Commissioner. *Id*. at 5-10. Plaintiff filed this action on March 26, 2021, seeking judicial review of the denial of his application for benefits. (Doc. 1). The Commissioner lodged the administrative record on February 23, 2022. (Doc. 11). Plaintiff filed an opening brief on July 28, 2022. (Doc. 16). Defendant filed an opposition on September 16, 2022. (Doc. 21). Plaintiff filed a reply to Defendant's opposition on October 3, 2022. (Doc. 22). The matter is deemed submitted on the pleadings.

## II. LEGAL STANDARD

### A. The Disability Standard

Disability Insurance Benefits and Supplemental Security Income are available for every eligible individual who is "disabled." 42 U.S.C. §§ 402(d)(1)(B)(ii), and 1381(a). An individual is "disabled" if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment …"[3] *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)). To achieve uniformity in the decision-making process, the Social Security regulations set out a five-step sequential evaluation process to be used in determining if an individual is disabled. *See* 20 C.F.R. § 404.1520; *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1194 (9th Cir. 2004). Specifically, the ALJ is required to determine:

---

[3] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrated by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

> (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe" impairments, (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level.

*Stout v. Comm'r. Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). The burden of proof is on a claimant at steps one through four. *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020) (citing *Valentine v. Comm'r of Soc. Sec. Admin*, 574 F.3d 685, 689 (9th Cir. 2009)). The burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given the claimant's RFC, age, education, and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014). To do this, the ALJ can use either the Medical-Vocational Guidelines or rely upon the testimony of a VE. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006); *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001). "Throughout the five-step evaluation, the ALJ 'is responsible for determining credibility, resolving conflicts in medical testimony and for resolving ambiguities.'" *Ford*, 950 F.3d at 1149 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

**B. Standard of Review**

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In determining whether to reverse an ALJ's decision, a court reviews only those issues raised by the party challenging the decision. *Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). A court may set aside the Commissioner's denial of benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

"Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (quoting *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453,

1457 (9th Cir, 1995)). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Rather, "[s]ubstantial evidence means more than a scintilla, but less than a preponderance; it is an extremely deferential standard." *Thomas v. CalPortland Co.*, 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and citations omitted).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (internal quotations and citations omitted). "If the evidence 'is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.'" *Ford*, 950 F.3d at 1154 (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). Even if the ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless. *Stout*, 454 F.3d at 1055-56. The burden of showing that an error is not harmless "normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

### III.   ISSUES

Plaintiff's pending motion argues that the ALJ erred by failing to properly evaluate the severity and limiting effects of Plaintiff's degenerative disc disease because the ALJ erroneously concluded that the impairment was not "medically determinable." (Doc. 16 at 4-6).

### IV.   DISCUSSION

At step two of the sequential evaluation, the ALJ must determine if the claimant has a medically severe impairment or a combination of impairments. *Smolen v. Chater*, 80 F.3d 1273, 1289-90 (9th Cir. 1996) (citing *Yuckert*, 482 U.S. at 140-41); 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1521. An impairment is severe if it "significantly limits your physical or mental ability to do basic work activities." *See* 20 C.F.R. §§ 404.1520(c), 416.921. Basic work activities are "the abilities and aptitudes necessary to do most jobs," and those abilities and aptitudes include: (1) physical functions such as walking, standing, sitting, lifting, and carrying; (2) capacities for seeing, hearing and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521, 416.921.

It is Plaintiff's burden to prove that these impairments or their symptoms affect her ability to perform basic work activities. *Edlund v. Massanari*, 253 F.3d 1152, 1159-60 (9th Cir. 2001). A severe impairment must meet the durational requirement under the Act, which means the impairment has lasted, or is expected to last, 12 months or more. 20 C.F.R. § 404.1509. Plaintiff also must establish disability before the date last insured. *Flaten*, 44 F.3d at 1458. Any deterioration in a claimant's condition after that date is irrelevant. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989).

"Step two is merely a threshold determination meant to screen out weak claims." *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017) (citing *Yuckert*, 482 U.S. at 146-47); *see also Webb v. Barnhart*, 433 F.3d 83, 686 (9th Cir. 2005) (stating that step two is a "de minimis screening device" to "dispose of groundless claims" (quoting *Smolen*, 80 F.3d at 1290). "Ample authority cautions against a determination of nondisability at step two." *Ortiz v. Comm'r of Soc. Sec.*, 425 F. App'x 653, 655 (9th Cir. 2011); *see also Bowen*, 482 U.S. at 153 (noting that step two is intended to identify "claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled.").

"An ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his [or her] conclusion is clearly established by medical evidence." *Webb*, 433 F.3d at 688.(quotations marks omitted); *see Ortiz*, 425 Fed. Appx. At 655 (the total absence of objective evidence of a severe medical impairment would permit the court to affirm a finding of no disability at step two); *Cf. Ukolov v. Barnhart*, 420 F.3d 1002, 1006 (9th Cir. 2005) (the claimant failed to satisfy his step two burden where "none of the medical opinions included a finding of impairment, a diagnosis, or objective test results").

Plaintiff argues the ALJ's conclusion "that 'there are no medical signs' to establish a medically determinable impairment during the relevant period is [] erroneous." (Doc. 16 at 6). Plaintiff asserts he has a clinical finding that supports a medical determination of a severe medical impairment. *Id*. Specifically, Plaintiff claims the April 2014 x-ray of his thoracic spine showed "multilevel degenerative changes with intervertebral disc space narrowing and mild vertebral body spurring" and degenerative changes of the cervical spine "support the medically

8

determinable impairment of degenerative disc disease." *Id*.

Plaintiff's claim that the April 2014 x-ray's report of degenerative changes in his back establishes evidence of a severe medically determinable impairment is unavailing. There is little, if any, evidence that Plaintiff's degenerative changes had an impact on his ability to work from January 1, 2014, through September 30, 2015. Dr. Shah, Plaintiff's treating physician did not find he was limited as a result of this condition. On April 14, 2014, Dr. Shah noted Plaintiff was experiencing back pain and diagnosed him with a thoracic spine sprain. (AR. 290). That same day, an x-ray revealed "degenerative changes" in his back. *Id*. at 289-90, 372-74. Thereafter, Plaintiff had three more appointments with Dr. Shah, from August 2014 to March 2015. *Id*. at 286-89. Dr. Shah, with the benefit of the April 2014 x-ray, did not diagnose Plaintiff with degenerative disc disease. Instead, Dr. Shah noted Plaintiff's back was back to "normal." *Id*. at 286.

Likewise, state agency consultants, who had the benefit of Plaintiff's April 2014 x-ray did not find Plaintiff possessed a medical impairment in his spine. Instead, the consultants found "[t]here is no indication that there is a medical opinion from any medical source" and that "the evidence in file is not sufficient to evaluate [Plaintiff's] claim." *Id.* at 66-67.

In contrast, it appears Dr. Shah was capable of diagnosing Plaintiff with a medical impairment if warranted. On June 2, 2017, Dr. Shah diagnosed Plaintiff with chronic low back pain. *Id*. at 275. That same day, Plaintiff underwent an x-ray of his spine that found there was moderate to severe disc space narrowing at Plaintiff's L5-S1 with adjacent bony sclerosis and anterior spurring and mild disc space narrowing at L4-L5. *Id*. at 326. Thereafter, Dr. Shah, with the benefit of the June 2017 x-ray, confirmed and attempted to treat Plaintiff's chronic low back pain. *Id*. at 271-74. No doctor translated the degenerative changes identified in Plaintiff's x-ray into a functional limitation restricting, in any degree, Plaintiff's ability to work within the applicable limitation period. Absent such evidence, the ALJ did not err in failing to conclude at step two that Plaintiff's alleged back condition was a severe impairment.

## V.   CONCLUSION

A reviewing court should not substitute its assessment of the evidence for the ALJ.

*Tackett*, 180 F.3d at 1098.  On the contrary, a reviewing court must defer to an ALJ's assessment as long as it is supported by substantial evidence.  42 U.S.C. § 405(g).  After review, the Court finds that the ALJ's decision is supported by substantial evidence and free of harmful legal error.

Accordingly, it is ORDERED:

1. Plaintiff's appeal of the decision of the Commissioner of Social Security (Doc. 16) is DENIED.
2. The decision of the Commissioner of Social Security is AFFIRMED.
3. The Clerk of the Court is directed to enter judgment in favor of the Commissioner of Social Security and close this case.

IT IS SO ORDERED.

Dated:   **May 31, 2023**

UNITED STATES MAGISTRATE JUDGE